UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN MCMANUS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF CERES, <br><br> Defendant. | No. 1:17-cv-00355-DAD-BAM <br><br> ORDER APPROVING SETTLEMENT AGREEMENT AND DISMISSING CASE <br><br> (Doc. No. 36) |

This matter is before the court on the joint motion for approval of the settlement agreement. (Doc. No. 36.) On August 21, 2018, the motion came before the court for hearing. Attorney Theodore Reid Coploff appeared on behalf of plaintiffs. Attorney Jesse Jeremy Maddox appeared on behalf of defendant. Having considered the briefing, and having heard the arguments of counsel, the court will grant the motion to approve the settlement agreement.

**BACKGROUND**

The twenty plaintiffs joined in this action are current or former firefighters for defendant City of Ceres ("City"). (Doc. No. 36 at 3.) Plaintiffs initiated this action against the City under the Fair Labor Standards Act ("FLSA"), alleging that the City failed to provide required overtime compensation by excluding certain incentives in the calculation of plaintiffs' pay. (*Id.*) Specifically, plaintiffs allege that the City excluded cash paid to plaintiffs for forgoing medical benefits from the "regular rate" of pay used to calculate plaintiffs' overtime compensation, in

1

violation of the FLSA as interpreted by the Ninth Circuit in *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016).

A scheduling order was entered on January 12, 2018, setting a deadline for non-expert discovery to be completed by July 20, 2018, and for expert discovery to be completed by September 21, 2018. (Doc. No. 30.) Prior to the discovery deadline, on June 27, 2018, the parties filed a joint motion to approve the settlement agreement. (Doc. No. 36.) No substantive motion practice occurred.

The settlement agreement proposes a total payment of $161,432.86, to be allocated as follows: $45,881.43 in settlement of plaintiffs' claims for overtime compensation; $45,881.43 in settlement of plaintiffs' claims for liquidated damages; and $69,670.00 for attorneys' fees and costs. (Doc. No. 36-2 at 4–5.) Unlike a class or collective action settlement where a class representative sponsors a settlement on behalf of the class, here, each of the plaintiffs has specifically agreed to his own individual settlement agreement with the defendant to resolve the claims that he asserted in this case. Those agreements are attached as Exhibit B to the settlement agreement. (Doc. No. 36-4.)

## LEGAL STANDARD

Settlement of claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014). "The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007).

The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, in this circuit, district courts have normally applied a widely-used standard adopted by the Eleventh

Circuit, looking to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Yue Zhou*, 2007 WL 2298046, at *1. "A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Selk*, 159 F. Supp. 3d at 1172 (internal quotation marks and citation omitted). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because it would shield employers from the full cost of complying with the statute. *Id.*

Once it is established that there is a bona fide dispute, courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of a FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions. *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM GGH, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-cv-2214-KJM-EFB, 2014 WL 1379861, at *6 (E.D. Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Almodova v. City & Cty. of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply), *recommendations adopted*, 2010 WL 1644971 (D. Haw. Apr. 20, 2010). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the

3

settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id.* Settlements that reflect a fair and reasonable compromise of issues that are actually in dispute may be approved in order to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

## DISCUSSION

**A.  Bona Fide Disputes**

The parties contend that there is a bona fide dispute over the existence and extent of the City's FLSA liability. The City generally denies plaintiffs' allegations that it willfully violated the FLSA and did not act in good faith with respect to the calculation of the regular rate.[1] (Doc. No. 36 at 6.) The City further contends that it has paid plaintiffs overtime more generously than required by the FLSA, which the City claims entitles it to offsets that significantly reduce or eliminate liability to each plaintiff. (*Id.*)

In *Flores* the Ninth Circuit held that the payment of cash in lieu of health insurance benefits must be included in the calculation of the regular rate of pay for overtime payments under the FLSA. That decision strongly suggests that the City would be liable to plaintiffs here. Generally, "[i]f there is no question that the FLSA entitles plaintiffs to the compensation they seek, then a court will not approve a settlement because to do so would allow the employer to avoid the full cost of complying with the statute." *Selk*, 159 F. Supp. 3d at 1172; *see also Socias v. Vornado Realty L.P.*, 297 F.R.D. 38, 41 (E.D.N.Y. 2014) ("Without judicial oversight . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with [FLSA]."); *Hogan v. Allstate Beverage Co., Inc.*, 821 F. Supp. 2d 1274, 1282 (M.D. Ala. 2011) ("Any amount due that is not in dispute must be paid unequivocally; employers

/////

---

[1] Normally, the statute of limitations in a FLSA action is two years, but can be extended to three years if an employer's violation is willful. *See Flores*, 824 F.3d at 906; 29 U.S.C. § 255(a). In addition, where the FLSA violation is not in good faith, plaintiffs are also to be awarded liquidated damages. *Flores*, 824 F.3d at 905–06; 29 U.S.C. §§ 216(b), 260.

4

may not extract valuable concessions in return for payment that is indisputably owed under the FLSA.").

Here, the parties assert that the proposed settlement amount represents 100 percent of what plaintiffs would expect to recover if the case were litigated to judgment. (Doc. No. 36 at 4.) The settlement amount represents an agreed-upon amount for all overtime compensation allegedly owed to plaintiffs, plus an equal amount of liquidated damages, using a three-year statute of limitations. (*Id.*) While a bona fide dispute is arguably lacking here in light of the Ninth Circuit's decision in *Flores*, that fact alone does not compel rejection of the settlement because the value of plaintiffs' claims has not been discounted as part of the settlement. Approval of the parties' proposed settlement agreement thus would not thwart the purposes of the FLSA. The court therefore proceeds to consider the fairness and reasonableness of the proposed settlement.

**B.     The Proposed Settlement is Fair and Reasonable**

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA. *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at *3 (N.D. Cal. June 22, 2017). Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA: (1) the plaintiff's range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at *2 (S.D. Cal. Dec. 21, 2017); *Slezak*, 2017 WL 2688224, at *3; *Selk*, 159 F. Supp. 3d at 1173. The court addresses each of these factors below.

    1.     <u>Plaintiffs' Range of Possible Recovery</u>

The parties engaged in an extensive analysis of payroll and time records in order to calculate plaintiffs' damages. Counsel for both parties calculated plaintiffs' damages based on a 27-day FLSA work period, pursuant to 29 U.S.C. § 207(k). (Doc. No. 36 at 7.) For periods in

5

which plaintiffs worked in excess of 204 hours, the regular rate was re-calculated to include the City's cash-in-lieu of medical benefit payment, taking into account any offsets in each work period, such as paid leave hours counting toward the 204-hour threshold. (*Id.*) Counsel for both parties conducted independent calculations, and to the extent individual damages estimates diverged, counsel negotiated and agreed upon a reasonable figure supported by the calculations. (*Id.*)

Under the proposed settlement agreement, the City will pay a total of $161,432.86, which includes $45,881.43 for unpaid overtime compensation, $45,881.43 in liquidated damages, and $69,670 in attorneys' fees and costs. (*Id.* at 4.) The damages breakdown by plaintiff is illustrated in Exhibit A to the settlement agreement, recreated below:

| # | NAME | TOTAL BACKPAY AMOUNT DUE | LQIUIDATED DAMAGES AMOUNT | TOTAL BACKPAY AND LIQUIDATED DAMAGES |
|---|---|---|---|---|
| 1 | BORN, TYLER | $ 1,135.46 | $ 1,135.46 | $ 2,270.92 |
| 2 | CRAIG, ALEXANDER | $ 2,030.01 | $ 2,030.01 | $ 4,060.02 |
| 3 | CRIPE, JASON | $ 4,214.50 | $ 4,214.50 | $ 8,429.00 |
| 4 | DILIBERTO, VINCENT | $ 421.32 | $ 421.32 | $ 842.64 |
| 5 | FINLEY, WILLIAM | $ 2,540.28 | $ 2,540.28 | $ 5,080.56 |
| 6 | FOWLER, ZACHARY | $ 2,035.99 | $ 2,035.99 | $ 4,071.98 |
| 7 | GOMES, MICHAEL | $ 1,543.23 | $ 1,543.23 | $ 3,086.46 |
| 8 | GOULDING, JONATHAN | $ 2,506.91 | $ 2,506.91 | $ 5,013.82 |
| 9 | HACKETT, JEREMY | $ 1,540.22 | $ 1,540.22 | $ 3,080.44 |
| 10 | HAMPTON, CARLOS | $ 1,846.61 | $ 1,846.61 | $ 3,693.22 |
| 11 | MAGAGNINI, DOMINIC | $ 1,325.51 | $ 1,325.51 | $ 2,651.02 |
| 12 | MAGHONEY, MARC | $ 6,762.46 | $ 6,762.46 | $ 13,524.92 |
| 13 | MCMANUS, JONATHAN | $ 2,050.16 | $ 2,050.16 | $ 4,100.32 |
| 14 | MILBECK, VINCE | $ 1,998.76 | $ 1,998.76 | $ 3,997.52 |
| 15 | MILLER, MICHAEL | $ 1,824.33 | $ 1,824.33 | $ 3,648.66 |
| 16 | SERPA, JEFFREY | $ 2,207.93 | $ 2,207.93 | $ 4,415.86 |
| 17 | SPANI, JOSEPH | $ 1,308.06 | $ 1,308.06 | $ 2,616.12 |
| 18 | STEENBURGH, CHRISTOPHER | $ 4,219.11 | $ 4,219.11 | $ 8,438.22 |
| 19 | STEENBURGH, DAVID | $ 2,550.02 | $ 2,550.02 | $ 5,100.04 |
| 20 | SULLIVAN, RANDY | $ 1,820.56 | $ 1,820.56 | $ 3,641.12 |
|  | TOTALS | $ 45,881.43 | $ 45,881.43 | $ 91,762.86 |

(Doc. No. 36-3.) The parties assert that the settlement amount thus represents the maximum amount that plaintiffs could expect to recover if the case were litigated to judgment—calculated

based on the extended three-year statute of limitations and including liquidated damages. (Doc. No. 36 at 4.) Consideration of the factor relating to the range of possible recovery weighs, in this case, heavily in favor of approval of the FLSA settlement.

### 2. The Stage of the Proceedings and the Amount of Discovery Completed

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed in order to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have sufficient information to make an informed decision regarding settlement. As noted above, the parties engaged in an "extensive analysis of payroll and time records, produced by Defendant to Plaintiffs, in order to calculate the damages based on Plaintiffs' hours worked in excess of 204 hours in a 27-day work period, while taking into account hours of paid leave counted toward the threshold." (Doc. No. 36 at 4.) Counsel for both parties performed their own calculations and came to a consensus as to each plaintiff's damages amount. (*Id.* at 7.) All twenty plaintiffs, moreover, were given the opportunity to review these calculations and the underlying methodology used in arriving at them. (*Id.* at 6.) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate early-stage settlement.

### 3. The Seriousness of the Litigation Risks Faced by the Parties

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] . . . or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). Although plaintiffs had a strong likelihood of prevailing on their FLSA claims, the court recognizes that the parties seek to avoid incurring further litigation costs and expenses. The risks inherent in lengthy litigation weigh in favor of early settlement here, where plaintiffs will recoup the full amount of their expected recovery. (Doc. No. 36 at 4.)

/////

####    4. The Scope of Any Release Provision in the Settlement Agreement

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5. An expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are, therefore, hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which 60 percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision:

> extends only to all grievances, disputes or claims of every nature and kind, known or unknown, suspected or unsuspected, arising from, or attributable to Plaintiffs' claims that the City of Ceres violated the FLSA up to and including the effective date of this Agreement by failing to properly calculate the regular rate of pay. The parties understand that this release does not include claims relating to conduct or activity which does not arise from or is not attributable to Plaintiffs' FLSA claims or to any conduct or activity which occurs after the effective date of this Agreement.

(Doc. No. 36-2 at 7.) As such, the scope of the waiver and release provisions in the proposed settlement agreement appropriately track the breadth of plaintiffs' FLSA claims. Consideration of this factor therefore also weighs in favor of approval of the FLSA settlement.

####    5. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014

1 | WL 3404531, *5 (N.D. Cal. July 11, 2014). Here, plaintiffs' counsel declares that this settlement is fair, reasonable, and adequate to all concerned. (Doc. No. 36 at 8.) Further, prior to the parties' reaching an agreement, all plaintiffs were given the opportunity to review the settlement agreement, their individual settlement amounts pursuant thereto, the methodology upon which their amounts were based, and the amount of attorneys' fees and costs. (Doc. No. 36-1 at ¶¶ 7–9.) No plaintiff objected to the settlement agreement, and all plaintiffs have executed the settlement agreement as demonstrated in Exhibit B thereto. (Doc. No. 36 at 6; Doc. No. 36-4.) Accordingly, consideration of this factor weighs in favor of approval of the FLSA settlement.

6. The Possibility of Fraud or Collusion

Here, the court finds that there is a low probability of fraud or collusion because the parties used payroll record data to calculate back overtime pay and liquidated damages, and provided all plaintiffs the opportunity to review their settlement amounts, the methodology used to calculate those amounts, and the amount of attorneys' fees and costs. (Doc. No. 36 at 6.) Plaintiffs' counsel asserts that the settlement amount represents 100 percent of plaintiffs' expected recovery, and that no plaintiff has objected to the settlement. (*Id.* at 6–7.) This approach, based on an objective analysis of plaintiffs' time records, "guards against the arbitrariness that might suggest collusion." *Selk*, 159 F. Supp. 3d at 1179.

In addition, there is nothing in the record to suggest plaintiffs' counsel "allowed the pursuit of their own self-interests . . . to infect the negotiation." *In re Bluetooth Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). The requested award for attorneys' fees and costs does not detract from plaintiffs' recovery, since all plaintiffs will receive the full amount of what they are allegedly due. (Doc. No. 36 at 4.) As such, this settlement lacks any evidence of more "subtle signs" of collusion, such as, for example, when counsel receive a disproportionate distribution of the settlement, or when the plaintiff class receives no monetary distribution but counsel are "amply rewarded." *In re Bluetooth*, 654 F.3d at 947.

Upon considering the totality of the circumstances, as reviewed above, the court finds that the proposed settlement is fair and reasonable.

/////

**C. Attorneys' Fees**

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" for awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

The Ninth Circuit has generally set a twenty-five percent benchmark for the award of attorneys' fees in common fund cases. *Id.* at 1047–48; *see also In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25 percent of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). Reasons to vary the benchmark award may be found when counsel achieves exceptional results, undertakes "extremely risky" litigation, generates benefits for the plaintiff class beyond simply the cash settlement fund, or handles the case on a contingency basis. *Vizcaino*, 290 F.3d at 1048–50; *see also In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. The Ninth Circuit has approved the use of lodestar cross-checks as a way of determining the reasonableness of a particular percentage recovery of a common fund. *Id.* at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted."); *see also In re Online DVD–Rental*, 779 F.3d at 955.

Here, the settlement agreement includes $69,670 in attorneys' fees and costs. (Doc. No. 36 at 7.) At the hearing on the present motion, counsel for plaintiffs estimated that costs alone amounted to approximately $14,457 of that total amount. The remaining $55,213 in attorneys' fees represents approximately 34 percent of the overall settlement amount, which is above the 25

percent benchmark for this circuit.  However, the court finds that the results obtained by plaintiffs' counsel support an above-benchmark fee award here, given that plaintiffs will receive 100 percent of what they could expect to recover if the case were litigated all the way to judgment, and the requested attorneys' fees and costs do not undermine plaintiffs' recovery.

Moreover, a lodestar cross-check further bolsters the attorneys' fee request in this case. The lodestar figure is calculated by multiplying the number of hours the attorney reasonably expended on the litigation by the reasonable hourly rate. *In re Bluetooth*, 654 F.3d at 941.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'" *Bond v. Ferguson Enters., Inc.*, No. 1:09–cv–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149 MMM (SHx), 2008 WL 8150856 (C.D. Cal. July 21, 2008)); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D. Cal. 2015) ("[I]t is well established that '[t]he lodestar cross-check calculation need entail neither mathematical precision nor bean counting.'").

This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and $545 and $695 for senior counsel and partners.  *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, 1:13-cv-00474-DAD-BAM, at *8 (E.D. Cal. Feb. 27, 2017).  Some judges in the Fresno Division of the Eastern District of California have approved similar rates in various class action settings, while others have approved lower rates. *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 452 (E.D. Cal. 2013) (awarding between $280 and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney with 21 years of experience); *Gong-Chun v. Aetna Inc.*, No. 1:09-cv-01995-SKO, 2012 WL 2872788, at *23 (E.D. Cal. July 12, 2012) (awarding between $300 and $420 per hour for associates, and between $490 and $695 per hour for senior counsel and partners).  *But see In re Taco Bell Wage and Hour Actions*, 222 F. Supp. 3d 813, 838–40 (E.D. Cal. 2016) (concluding that Fresno Division rates are $350 to $400 per hour for attorneys with twenty or more years of experience, $250 to $350 per hour for attorneys with less than fifteen years of experience, and $125 to $200 per hour for attorneys with less than two years of experience); *Reyes v. CVS Pharm., Inc.*, No. 1:14-cv-00964-MJS, 2016 WL 3549260, at *12–13 (E.D. Cal. June 29, 2016)

(awarding between $250 and $380 for attorneys with more than twenty years of experience, and between $175 and $300 for attorneys with less than ten years' experience); *Rosales v. El Rancho Farms*, No. 1:09-cv-00707-AWI, 2015 WL 4460635, at *25 (E.D. Cal. July 21, 2015) (awarding between $175 and $300 per hour for attorneys with less than ten years of experience and $380 per hour for attorneys with more than twenty years' experience); *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001, at *22 (E.D. Cal. June 11, 2012) (awarding between $264 and $336 per hour for associates, and $416 and $556 per hour for senior counsel and partners).

Here, plaintiffs' counsel has accrued $84,097.89 in attorneys' fees and costs for 280.6 hours of work. (Doc. No. 36 at 7–8.) This number amounts, on average, to an hourly rate of just under $300, which is certainly appropriate given the experience of plaintiffs' counsel. Plaintiffs' counsel, Mr. Coploff, represented at the hearing that he has primarily litigated FLSA cases for over eight years as both an associate and a partner, and that co-counsel in this matter has decades of experience litigating FLSA, union, and wage and hour cases. Moreover, the requested award for attorneys' fees and costs amounts to $14,427.89 less than the lodestar. (*Id.* at 8.) Therefore, have fully considered the lodestar cross-check, the court approves the award of $69,670 in attorneys' fees and costs in approving the settlement.

## CONCLUSION

For the forgoing reasons:

1. The parties' joint motion to approve the settlement agreement (Doc. No. 36) is granted;
2. The parties' settlement agreement including the award of attorneys' fees and costs (Doc. Nos. 36-2, 36-3, 36-4), which is incorporated herein by reference, is approved as fair, reasonable, and just in all respects, and the parties shall perform the settlement agreement in accordance with its terms;
3. The court expressly retains jurisdiction over this action for purposes of enforcing the settlement agreement;

/////

4. This action is hereby dismissed with prejudice; and

5. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated: **September 5, 2018**

_____
UNITED STATES DISTRICT JUDGE